Hat, Judge,
delivered the opinion of the court:
The plaintiff, Washington Market Company, is a corporation organized and existing under the laws of the United *931 States and brings this suit to recover the sum of $200,000 from the United States.
The United States has demurred to the petition.
The plaintiff alleges in its petition that Congress passed an act approved May 20, 1870, to incorporate the Washington Market Company; that in accordance with that act the plaintiff was organized, and under the provisions of that act took possession of reservation 7 and used and occupied it continuously and exclusively until the lease granted under the act of May 20,1870, was annulled by the act of Congress approved March 4, 1921.
The act of May 20, 1870, provided, among other things as follows:
“ Seo. 12. And be it further enacted, That the privileges conferred by this act shall be enjoyed by said company for the term of ninety-nine years, unless sooner terminated for a non-compliance or abuse of the conditions herein imposed upon said company, which may be done by suit in the name of the United States, to recover possession of said property. At the end of said period of ninety-nine years, the said lands, with all the erections and improvements thereon, shall revert to the United States, unless Congress shall by law extend the period of occupation thereof by said company: Provided, That if the corporation of the city of Washington shall, after a period of thirty years from the approval of this act, by a vote of the councils thereof express a desire to possess itself of the said market buildings and grounds, Congress may authorize the corporate authorities to take possession of the same upon payment to said Market House Company of a sum of money equal to a fair and just valuation of the buildings and improvements then standing on said grounds, and the mode and manner of ascertaining such valuation shall be determined by Congress.”
The plaintiff further alleges that the market establishment commonly known as “ Center Market ” has a value of approximately $2,000,000; that the market contained 1,000 stalls and places of retail dealers and has cold-storage rooms containing approximately 400,000 cubic feet; that a very large sum of money was expended as operating expenses, advertising, and in building up the going concern value of the said business of the plaintiff; that the market conducted was well patronized and was the principal and largest mar *932 ket in the District of Columbia and became such by reason of its operation by the plaintiff and the expenditure of large sums of money and the efforts and services of its officers and employees.
The plaintiff further alleges in its petition that by an act of Congress of March 4, 1921, 41 Stat. 1441, Congress declared the “ purpose and intent of the United States to annul and hold for naught the lease made by Congress to the Washington Market Company of reservation number seven, in the District of Columbia, and to take over unto its own ownership, use, occupancy, and control the said grounds and buildings and improvements thereon and therein now held and occupied by said market company and its tenants.” The said act also provides as follows:
“ Sec. 3. That the President of the United States, as soon as is practicable after the approval of this act, shall appoint a commission composed of three disinterested men, not more than one of whom shall be a resident of the District of Columbia, to appraise the said buildings and improvements thereon and therein which were erected or ma.de at the expense of the Washington Market Company and which stand and remain upon said reservation, .the valuation thereof to be determined as of the date of filing said award; and the finding of a majority of said commission shall constitute the award. Any member of the commission who may dissent from the award made by the majority thereof shall make a minority report in writing, which shall be filed with the award and made part of the record to be considered by the court of appeals, if an appeal be taken as hereinafter provided. A copy thereof shall be delivered to the market company at the same time and place that the award is delivered.
“ Thereafter the said commission shall fix the amount to be awarded as a fair and just valuation of» the buildings and improvements erected and made on said premises at the expense of the said market company and remaining thereon when the award is made; and the award of the commission, together with the record and evidence on which the same is based, shall, within six months from the date of the appointment and qualification of the members thereof, be filed in the office of the clerk of the Court of Appeals of the District of Columbia, and copies of said award and minority report or finding, if any, together with said record and evidence, shall, on the day of the filing thereof, be delivered by said commission to the Attorney General of the United States and to *933 the market company at its principal place of business in the District of Columbia.
“If either party be dissatisfied with the amount of the award, such dissatisfied party may take an appeal to the Court of Appeals of the District of Columbia by noting in the office of the clerk of the court of appeals an appeal therefrom within thirty days after the filing of said award and perfect the said appeal within sixty days thereafter by filing the entire record, or a copy thereof, certified by the chairman or any two members of said commission, and filing it in the office of the clerk of the Court of Appeals of the District of Columbia, which court is hereby vested with jurisdiction to hear and determine such appeal, and may revise the amount of the award as shall be just: and the judgment rendered by said court shall be final.”
The petition of the plaintiff further alleges that hearings were had before the commission appointed in accordance with the provisions of the act; that a majority of said commission made a total award of $960,250, as the value of the buildings and improvements erected on reservation I, and made at the' expense of the plaintiff; that from this award the plaintiff appealed to the Court of Appeals of the District of Columbia, and after a hearing on said appeal the Court of Appeals found that the fair and just value of the buildings and improvements ivas the sum of $1,522,197.88; that neither in the award of the commission nor in the finding of the Court of Appeals fixing the fair and just value of the buildings and improvements erected on reservation 7 at the expense of the plaintiff was any allowance made for going concern value, and such item was expressly excluded from both the award and finding; that the Court of Appeals held that if the matter were properly before them they would have no doubt of the right of the plaintiff to a reasonable allowance for going concern value, but that the question was not before them nor did they have jurisdiction to consider it.
The petition of the plaintiff further alleges that pending the appeal from the award of the commission the United States on April 1, 1922, .paid a proportion of the amount of the award, and entered into possession, and deprived the plaintiff of the use and occupancy of the buildings and *934 improvements, and also deprived the plaintiff of its said business and the large profits derived therefrom and potential earnings without any recompense or payment to the plaintiff therefor; and that the United States is receiving and enjoying the earnings and profits derived from the going concern value of said business which was created by the plaintiff.
The petition of the plaintiff further alleges that it was in reality a going concern, and that as such the establishment of the plaintiff at the time of its being taken over by the United States had a value, intangible and distinct, separate, and apart from the value of its physical property, and from the value of the buildings and improvements, which intangible and separate value arose from the existence of a profitable going business, and was what is commonly known as going concern value; that such intangible property arising from the existence of plaintiff’s market establishment as a going business at the time of its being taken over by the United States was of the value' of $200,000; and that the United States has not paid the plaintiff for such intangible property so taken.
Under the provisions of the act of May 20, 1870, the plaintiff had a lease of this property, which lease, after a period of 30 years from the date of the approval of the act, could be defeated by Congress. The proceeding by which Congress took possession of this property is not a proceeding in eminent domain to appropriate the property of the market company to a public use. It is a proceeding by which Congress annuls a lease of public property and takes back what it had leased, and by a proceeding which is strictly in accordance with the terms of the lease or contract which it had with the market company. The fact that the corporation of Washington is no longer in existence can not deprive Congress of its power to annul the lease.
Congress by the act of March 4, 1921, 41 Stat. 1441, provided for the annulment of the lease and also made provision for the payment to the plaintiff of the value of the buildings and improvements erected on the property by the plaintiff. This value was to be ascertained by a commis *935 sion; from the award of said commission the plaintiff, if it was not satisfied with the award, had the right to appeal to the Court of Appeals of the District of Columbia. The award was made by the commission and an appeal was taken to the court, which increased the amount of the award. The finding of the Court of Appeals, so far as this court is concerned, is final.
Congress has the power to declare in what court the United States may be sued, and having so declared, and having given to the plaintiff a forum in which to assert its rights, no other court can take jurisdiction. The Government has consented to be sued in the Court of Appeals of the District of Columbia, and is not liable to suit in this court; its liability can not be extended; if Congress had intended that the plaintiff should have the right to bring its suit in this court it would have said so, but by selecting another court deprived this court of jurisdiction. We can not presume that as to one item of the plaintiff’s claim Congress intended that this court should have jurisdiction when it conferred jurisdiction upon another court “ to hear and determine such appeal,” and gave that court jurisdiction to “revise the amount of the award as shall be just.” Jurisdiction must affirmatively appear; we can not take it by implication. If the plaintiff was aggrieved by the judgment of the Court of Appeals; if it thought that that court had not taken into account all the items to which it felt it was justly entitled, the plaintiff had its remedy.
If the contention of the plaintiff is correct, that the proceeding inaugurated by Congress was one in eminent domain to appropriate its property for public use, yet that fact would not confer jurisdiction upon this court to determine the question which the plaintiff now submits in its petition.
In the case of Monongahela, Navigation Company v. United States, 148 U. S. 312, the principle was laid down that Congress had not the right to determine what shall be the measure of compensation; that this is a judicial, not a legislative, question; that when the taking has been ordered then the question of compensation is judicial. To quote the language of the court: “ It does not rest with the public, taking the *936 property, through Congress, or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.”
Congress in the case at bar, in strict accordance with the principles of the case above cited, provided a forum whose duty it was to ascertain the compensation, but Congress did not say what that compensation should be, and did not undertake to do so. Congress went further, and provided for an appeal from the award of the commission to the Court of Appeals of the District of Columbia, upon which court it conferred plenary powers “to hear and determine such appeal” and “to revise the amount of the award as shall be just.” Thus the whole question of compensation, the going-concern value, and all other items entering into the question of just compensation were before that court for its determination. Congress in conferring this jurisdiction did not confine the court to any rule of compensation and did not exclude any items of value. It gave to the Court of Appeals the power to determine what compensation should be just, and the power to revise the amount of the award. That court had full power to decide the question which the plaintiff now asks this court to decide, and Congress having conferred jurisdiction upon the Court of Appeals this court can not, if it would, take over the jurisdiction specifically conferred upon another tribunal. As heretofore pointe.l out, if the plaintiff was not satisfied with the decision of the Court of Appeals, it had its remedy. Certainly this court can not now afford it any relief.
The demurrer must be sustained and the petition of the plaintiff must be dismissed. It is so ordered.
Downey, Judge, Booth, Judge, and Campbell, Chief Justice, concur.
Gkaham, Judge, took no part in the decision of this case.